UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| v. | |
| HERMAN FRIEDMAN | Mag. No. 08-6118 (MAS) |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

From on or about July 5, 2007 to on or about March 25, 2008, in Hudson County, in the District of New Jersey, and elsewhere, defendant

HERMAN FRIEDMAN

did knowingly, willfully, and corruptly give, offer, and agree to give a thing of value, namely a cash payment totaling approximately $5,000, to an agent of the Township of West New York, with intent to influence and reward the agent in connection with a business, transaction, and series of transactions of the Township of West New York involving a thing of value of $5,000 and more, in violation of Title 18, United States Code, Section 666(a)(2).

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

SEE ATTACHMENT A

continued on the attached page and made a part hereof.

_____
Courtney B. Foster
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
September 3, 2008, at Newark, New Jersey

HONORABLE MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE

_____
Signature of Judicial Officer

## ATTACHMENT A

I, Courtney B. Foster, a Special Agent with the Federal Bureau of Investigation, having conducted an investigation, reviewed recordings and documents, and spoken with other individuals, have knowledge of the facts set forth below. All statements which I have attributed to others have been set forth in substance and in part.

1. At all times relevant to this Complaint:

    a. The Township of West New York (the "Township") was a municipality located in Hudson County, New Jersey. The Township, a local government, received federal benefits in excess of $10,000 during a one-year period as defined in Title 18, United States Code, Section 666(b) and (d)(5).

    b. A cooperating witness (hereinafter, the "C.W."), was employed as Construction Code Official by the Township. As Construction Code Official, the C.W. headed the Township's department for Code Enforcement and Office of Housing Inspection, and was responsible for, among other things, enforcing the Township's construction code, inspecting rental apartments, issuing permits and Certificates of Occupancy, and ensuring compliance with federal, state and local regulations. A Certificate of Occupancy was a legal document certifying that a building complied with certain regulations and thus was suitable to be occupied.

    c. 235 56th Street, West New York, New Jersey ("235 56th Street") was a real estate property in the Township owned by "235-56th St. Assoc. LLC." According to records filed with the Township, 235 56th Street was a building with 16 units, 15 of which were residential units and 1 of which was a commercial unit. 235 56th Street had an additional space on the ground floor adjacent to the commercial unit that was styled as a residential unit and designated as "Apartment 1A." Under the zoning laws that governed 235 56th Street, Apartment 1A could not be utilized legally as a residential unit because no provision was made for such use in the plans that were on file with the Township for 235 56th Street. In addition, 235 56th Street lacked a Certificate of Occupancy.

2. From on or about July 5, 2007 to on or about March 25, 2008, defendant HERMAN FRIEDMAN engaged in a scheme to give, offer and agree to give a corrupt payment of cash to the C.W. in exchange for acts performed in the C.W.'s official capacity as Construction Code Official with the Township.

3. On or about March 2, 2007, a Building Inspector employed by the Township conducted a routine inspection on 235 56th Street. As a result of that inspection, the Building Inspector issued a Notice of Violation and Order to Correct on or about March 28, 2007, instructing the owner of 235 56th Street

1

to remove the illegal apartment in the building. The Notice of Violation informed the owner of 235 56th Street that failure to correct the code violation could result in the issuance of a summons and complaint.

4. On or about July 6, 2007, defendant HERMAN FRIEDMAN visited the C.W. at the C.W.'s office concerning an Application for Variance with respect to 235 56th Street. The Application, which was dated July 5, 2007, identified the "present property description" as "15 units" and "1 store", and identified the "intent for property" as "16 units" and "1 store." The Application further identified the "proposed plan" as "make legal Apt. 1A, existing apartment."

5. According to the CW, defendant HERMAN FRIEDMAN stated that he wanted to make Apartment 1A a legal unit. The CW informed defendant HERMAN FRIEDMAN that defendant HERMAN FRIEDMAN would need to obtain a variance from the West New York Zoning Board of Adjustment in order to make Apartment 1A a legal unit. Defendant HERMAN FRIEDMAN then asked the CW whether there was anything the CW could do for him so that defendant HERMAN FRIEDMAN would not have to bring the matter before the Board of Adjustment.

6. On or about August 30, 2007, defendant HERMAN FRIEDMAN and the C.W. met at Apartment 1A. The meeting was consensually monitored and recorded by the FBI. At the beginning of the meeting, the C.W. noted that the space has "broke windows," a "door [] coming from the store," and that "it's a mess." Defendant HERMAN FRIEDMAN replied that "I'm gonna gut...[u/i] and make it a nice apartment. Otherwise what am I gonna do with it?" The C.W. thereafter stated that "it's not on your paperwork. It's not on anything," to which defendant HERMAN FRIEDMAN replied "it's not a Mickey Mouse apartment" and again claimed he would "make everything nice." The C.W. then asked "What are you suggesting?" and defendant HERMAN FRIEDMAN replied that "you put it on...." The C.W. thereafter stated that Apartment 1A probably had been used previously as commercial space and informed defendant HERMAN FRIEDMAN that "you're gonna have to go for a variance. That's it. I mean, what are you gonna do?"

7. In response, defendant HERMAN FRIEDMAN then stated, "Well, you know what you *could* do...." The C.W. then stated that the C.W. knew what the C.W. could do, but "after those watches....I mean you're killing me. (This was a reference to an incident that occurred in or about 1999 when defendant HERMAN FRIEDMAN gave watches to employees in West New York's building department who were then made to return the watches.) The C.W. then said, "So what are you suggesting?"

8. Seeking to discuss the criminal scheme in a concealed, non-audible manner, defendant HERMAN FRIEDMAN used his fingers to indicate an amount of money that he would be willing to pay the C.W. Defendant HERMAN FRIEDMAN first displayed two fingers, and the C.W. verbally confirmed that

2

the number meant "two grand." Asked by the C.W. whether that was the "best" he could do, defendant HERMAN FRIEDMAN then indicated the amount of $3,000. The C.W. then asked defendant HERMAN FRIEDMAN what was the best he could do. Defendant HERMAN FRIEDMAN then stated, "whatever makes you happy," and indicated an amount of $5,000. The C.W. then confirmed, "So we agree to five?" Defendant HERMAN FRIEDMAN agreed that a corrupt payment of $5,000 was acceptable.

9. On or about November 19, 2007, after defendant HERMAN FRIEDMAN failed to remove Apartment 1A from 235 56th Street, the Building Inspector who issued the initial Notice of Violation filed a Complaint against the owner of 235 56th Street based on the illegal apartment unit. A hearing on the Complaint originally was scheduled for February 4, 2008. After a representative of defendant HERMAN FRIEDMAN contacted the C.W. to request an adjournment, the hearing was reset to on or about April 7, 2008.

10. On or about February 11, 2008, a representative of defendant HERMAN FRIEDMAN visited the C.W. and provided the C.W. with six applications to permit work to be done on units at 235 56th Street, including Apartment 1A. The meeting was consensually monitored and audio recorded by the FBI. The C.W. declined to accept the applications because no such permits could issue due to the building's lack of a Certificate of Occupancy and Apartment 1A's status as an unauthorized unit.

11. On or about March 25, 2008, defendant HERMAN FRIEDMAN met again with the C.W. at the C.W.'s office. The meeting was consensually monitored, and audio and video recorded, by the FBI. Upon arriving at the C.W.'s office, defendant HERMAN FRIEDMAN reached into his coat pocket and produced an envelope containing $5,000 in cash in the form of 50 $100 bills. The C.W. counted out the money in the presence of defendant HERMAN FRIEDMAN and confirmed, "OK. All fifty pieces."

12. During the meeting on March 25, 2008, and in the presence of the C.W., defendant HERMAN FRIEDMAN filled out an application for a Certificate of Occupancy for 235 56th Street. The Application listed the number of units in the building as "16 plus commercial." Defendant HERMAN FRIEDMAN filed the Application with the Township on or about March 25, 2008 after making the $5,000 cash payment to the C.W.

3